IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GLORIA J. GREENLEE, *et al.*, :

    Plaintiffs, :

  v. :   Case No. 3:14-cv-173

MIAMI TOWNSHIP, OHIO,   JUDGE WALTER H. RICE

    Defendant. :

---

DECISION AND ENTRY ADOPTING IN PART AND REJECTING IN
PART UNITED STATES MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATIONS (DOC. #29); SUSTAINING DEFENDANT MIAMI
TOWNSHIP, OHIO'S, OBJECTIONS THERETO (DOC. #30);
OVERRULING PLAINTIFFS' OBJECTIONS THERETO (DOC. #32);
OVERRULING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
(DOC. # 2); SUSTAINING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DOC. #21); OVERRULING PLAINTIFFS' MOTION FOR
SANCTIONS (DOC. #20); JUDGMENT TO ENTER IN FAVOR OF
DEFENDANT AND AGAINST PLAINTIFFS; TERMINATION ENTRY

---

Plaintiffs Gloria and Kiel Greenlee, a mother and son who are proceeding *pro se*, filed suit against Miami Township, Ohio, seeking relief under 42 U.S.C. § 1983 for alleged violations of their constitutional rights. All parties moved for summary judgment. On December 18, 2014, United States Magistrate Judge Michael Newman issued a Report and Recommendations. Doc. #29. This matter is currently before the Court on the parties' Objections to that judicial filing. Docs. #30, 32.

I.   **Background and Procedural History**

On November 13, 2013, Kiel Greenlee was driving a car belonging to his mother, Gloria, when he hit black ice and skidded off the highway, damaging the front end of the car. He abandoned the car, which had landed in a ditch, and walked to get assistance. Officer Albert, of the Miami Township Police Department, discovered the abandoned car shortly thereafter and called for a tow truck. A search of Bureau of Motor Vehicle records revealed that the car belonged to Gloria Greenlee, but his attempts to contact her were unsuccessful.

While conducting an inventory search of the car before it was towed, Officer Albert discovered an insurance card issued to Kiel Greenlee. A search of the National Crime Information Center records revealed that Kiel had an active warrant from Kettering Municipal Court for failure to pay or appear for fines. Officer Albert speculated that Kiel had been driving the car and had left the scene because of the outstanding warrant. Additional attempts to reach Gloria and Kiel that evening were unsuccessful.

Around midnight on November 17, 2013, Officer Albert and Officer Miller, also of the Miami Township Police Department, went to the Greenlee's residence to discuss the accident and the arrest warrant. The Greenlees insisted that the arrest warrant had been vacated. A heated verbal exchange ensued, and Officer Albert allegedly drew his taser and threatened to use it. He further threatened to charge Gloria with obstructing official business. At that point, Darrell Greenlee,

2

Kiel's father, called to request that Officer Albert's supervisor be dispatched to the scene.

Officer Albert then allegedly threatened to charge both Plaintiffs with disorderly conduct. Plaintiffs produced documentation to show that the arrest warrant had, in fact, been vacated. Although Officer Albert confirmed this through his dispatcher, he nevertheless threatened to get a warrant so that he could return to arrest Kiel. He also threatened to keep the vehicle indefinitely. Sergeant Nienhaus, the officers' supervisor, then arrived at the scene and directed them to leave.

Kiel Greenlee filed a complaint with the Miami Township Police Department concerning: (1) the towing of the vehicle; (2) the lengthy impoundment of the vehicle; and (3) the conduct of the officers on November 17, 2013. Sergeant Fitzgerald conducted an internal investigation, and interviewed Plaintiffs.

On December 27, 2013, Chief Ronald Hess sent a letter to Plaintiffs, concluding that the towing of the car was "legal and was within our established policies." He found, however, that the vehicle should have been released to them on November 17th. Accordingly, he agreed to waive the storage charges so long as they paid the towing charge. Plaintiffs were later notified that if they did not recover the vehicle by a certain date, the storage charges would again begin to accrue. Chief Hess found that Officers Albert and Miller had violated rules of professional conduct, and agreed to take corrective action against them. Doc. #2-1, PageID#23-24.

Apparently, because Plaintiffs did not have money to pay the towing charge, the car remained impounded and storage charges again began to accrue. On March 10, 2014, Kiel sent a certified letter to the Miami Township Board of Trustees, seeking civil damages for Officer Albert's "theft" of the vehicle and notifying the Board of the alleged civil rights violations of the officers. Doc#2-1, PageID#25-32. Plaintiffs maintain that the Board of Trustees refused to take any action to remedy the situation. Rather, Kiel was informed that he could either file a lawsuit or pay the storage and tow fees for the car.

On June 2, 2014, Plaintiffs filed their "Complaint for Relief Pursuant to 42 U.S.C. § 1983." Doc. #1. Miami Township, Ohio, is the only named defendant. The basis of Plaintiffs' claim against the Township, however, is not entirely clear. In the Complaint, Plaintiffs first allege that Miami Township is vicariously liable for Officer Albert's conduct. Citing Ohio Revised Code § 2744.03(A)(5), they argue that, because the officer acted with malicious purpose, in bad faith, or in a wanton or reckless manner, Miami Township is not immune from liability for his actions.[1]

Although Plaintiffs assert no claims against Officer Albert, they maintain that, because he lacked authority, under Ohio law, to tow the vehicle from the ditch, his seizure of the car and the accompanying inventory search violated their

_____

[1] Plaintiffs' citation to Ohio Revised Code § 2744.03(A)(5) is a mystery. That subsection applies only when the loss at issue "resulted from the exercise of judgment or discretion *in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources*." (emphasis added). The alleged wrongdoing in this case has nothing to do with the acquisition or use of any resources.

4

Fourth Amendment right to be free from unreasonable searches and seizures. Plaintiffs also allege that he deprived them of their due process rights by not giving them 48 hours to tow the "abandoned junk motor vehicle" on their own, as required by Ohio Revised Code § 4513.63. In addition, Plaintiffs allege that, on November 17, 2013, Officer Albert trespassed on their property, and assaulted them when he threatened them with a taser.

Then, citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), Plaintiffs allege that Miami Township is liable under § 1983 for the decision made by its Board of Trustees not to remedy these wrongs, which Kiel brought to the Board's attention in his March 10, 2014, letter. According to Plaintiffs, the Board's ratification of the allegedly unconstitutional conduct of its employees constitutes an "official government policy," rendering Miami Township liable for violations of Plaintiffs' "Fourth, Fifth and Fourteenth Amendment rights of unlawful search and seizure, due process and equal protection." Doc. #1, PageID##12-13.

On the same date they filed the Complaint, Plaintiffs moved for summary judgment. In support of their motion, they submitted only Chief Hess's letter to Plaintiffs, Kiel's letter to the Miami Township Board of Trustees, the invoice for towing and storage of the vehicle, the vehicle title, and promissory note. Docs. ##2, 11.

Defendant filed a Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment. In addition to challenging the admissibility of some of Plaintiffs' evidence, Defendant argued that Plaintiffs had failed to establish any

5

constitutional violation, and had failed to identify a "custom or policy" of the Township that was the moving force behind the alleged constitutional violation. Doc. #10.  Plaintiffs filed their reply brief, Doc. #16, which was entitled "Motion for Judgment," and Defendant filed a Memorandum in Opposition, Doc. #18. Plaintiffs then moved for sanctions against Defendant's counsel.  Doc. #20.

Defendant filed its own Motion for Summary Judgment, Doc. #21, again arguing that there is no legal basis for imposing municipal liability under § 1983.  Plaintiffs filed a 59-page Memorandum in Opposition, Doc. #24, and Defendant filed its Reply, Doc. #27.

On December 18, 2014, Magistrate Judge Newman issued a Report and Recommendations on the cross-motions for summary judgment, and on Plaintiffs' motion for sanctions.  Doc. #29.  He noted that even though no discovery has been completed, none of the parties sought relief under Federal Rule of Civil Procedure 56(d).

Acknowledging the Court's obligation to construe the pleadings of *pro se* parties liberally, Magistrate Judge Newman interpreted Plaintiffs' Complaint to allege three separate claims against Miami Township:  (1) a § 1983 claim arising out of Officer Albert's allegedly unlawful tow and search of the vehicle on November 13, 2013; (2) a § 1983 "excessive force" claim arising out of the November 17, 2013, incident involving Officer Albert's threatened use of a taser; and (3) a claim that Miami Township was vicariously liable for Officer Albert's

6

"theft" of the vehicle, his assault on Plaintiffs, and his trespass on Plaintiffs' property.

Magistrate Judge Newman recommended that Plaintiffs' motion for sanctions, Doc. #20, be denied because it lacked merit, and because they had failed to comply with Rule 11's "safe harbor" requirements.  Noting that Plaintiffs had wholly failed to develop their arguments in their Motion for Summary Judgment, Doc. #2, he recommended that the perfunctory motion be denied without prejudice to re-filing with supporting arguments and evidence.  The Magistrate Judge read Plaintiffs' briefs as attempting to assert claims against Officer Albert in his individual capacity.  He therefore *sua sponte* also granted Plaintiffs leave to file an amended complaint within 21 days after the undersigned disposed of the Report and Recommendations.

Magistrate Judge Newman construed Defendant's Motion for Summary Judgment, Doc. #21, as motion for *partial* summary judgment.  He found that it addressed only Plaintiffs' first claim, arising from the search and tow of the vehicle on November 13, 2013, and ignored the two other claims.  With respect to that one § 1983 claim, he concluded that, even if Plaintiffs could establish a constitutional violation, they failed to present evidence from which a reasonable jury could find that a custom or policy of Miami Township was the moving force behind the alleged constitutional violation, as required by *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the imposition of municipal liability.  He

7

therefore recommended that Defendant's motion for partial summary judgment be granted, and that Plaintiffs be permitted to move forward on the other two claims.

## II.   Standard of Review

Both sides have filed Objections to the Report and Recommendations. Docs. ##30, 32. As to nondispositive matters, the Court must consider those Objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). With respect to dispositive matters, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b).

## III.   Plaintiffs' Motion for Sanctions (Doc. #20)

Plaintiffs filed a Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11(c)(2), Doc. #20. Plaintiffs have not objected to Magistrate Judge Newman's recommendation that the Court overrule the motion both on the merits and on procedural grounds. Based on the reasoning and citations of authority set forth in the Report and Recommendations, the Court ADOPTS Magistrate Judge Newman's recommendation, and OVERRULES Plaintiffs' Motion for Sanctions, Doc. #20.

## IV. Cross-Motions for Summary Judgment (Docs. ##2, 21)

As noted above, Magistrate Judge Newman construed Plaintiffs' Complaint to assert three separate claims against Miami Township: (1) a § 1983 claim arising out of Officer Albert's allegedly unlawful tow and search of the vehicle on November 13, 2013; (2) a § 1983 "excessive force" claim arising out of the November 17, 2013, incident involving Officer Albert's threatened use of a taser; and (3) a claim that Miami Township was vicariously liable for Officer Albert's theft of the vehicle, his assault on Plaintiffs, and his trespass on Plaintiffs' property.

Magistrate Judge Newman recommended that Defendant's Motion for Summary Judgment, Doc. #21, which he construed as a motion for *partial* summary judgment, limited solely to the § 1983 claim arising from the tow and search of the vehicle, be sustained. He further recommended that Plaintiffs' Motion for Summary Judgment, Doc. #2, be overruled, but without prejudice to re-filing, with supporting evidence and argumentation, on the two *remaining* claims not addressed in Defendant's motion. Doc. #29, PageID#397. Both sides have filed Objections to the Report and Recommendations. The Court turns first to those filed by Defendant, Doc. #30.

### A. Defendant's Objections to Report and Recommendations (Doc. #30)

#### 1. Scope of Claims Asserted

Defendant objects to Magistrate Judge Newman's interpretation of the scope of claims asserted in Plaintiffs' Complaint. Defendant agrees that, because Plaintiffs failed to present sufficient evidence from which a reasonable jury could

9

find that a custom or policy of the Township was the moving force behind the alleged constitutional violations, Defendant is entitled to summary judgment on Plaintiffs' § 1983 claim arising out of the November 13, 2013, tow and search of the car. Defendant denies, however, that the Complaint asserts any other claims against Miami Township.

Defendant maintains that, although the Complaint alleges additional wrongdoing by Officer Albert and Officer Miller on November 17, 2013, Plaintiffs do not allege that Miami Township is legally responsible. Likewise, according to Defendant, although the Complaint accuses the officers of conduct that may constitute theft, trespass, or assault under Ohio law, Plaintiffs have not asserted any state law claims against the township. Moreover, even if intentional tort claims were asserted against the township, it would be immune from liability under Ohio Revised Code § 2744.02.

Magistrate Judge Newman correctly noted that *pro se* plaintiffs are held to less stringent pleading standards, and their pleadings are to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That principle is perhaps slightly tempered here due to Plaintiffs' insistence that, although they may be *pro se*, "they do in fact have an understanding of the legal process, rules, statutes, case law, research and drafting legal documents as they are both degree holding paralegals." Doc. #32-1, PageID#446. In this case, Plaintiffs, in fact, agree with Defendant that Magistrate Judge Newman construed their allegations too liberally, and misinterpreted their claims. *Id.*

Plaintiffs' Objections to the Report and Recommendations, Doc. #32-1, significantly clarify the contours of their claim against Miami Township. Plaintiffs now specifically deny that they are seeking to hold Miami Township vicariously liable for the conduct of its employees. *Id.*, PageID#446. Instead, Plaintiffs assert just one § 1983 claim against Miami Township, based on allegations that a custom or policy of the township was the proximate cause of the alleged constitutional violations. As the Court reads Plaintiffs' Objections, this one claim encompasses *all* of the officers' alleged misconduct, as described in Kiel's March 10, 2014, letter to the Miami Township Board of Trustees.[2] The theory of liability hinges on the Board of Trustees' alleged ratification of the officers' actions, and its failure to adequately investigate Kiel's complaints. *Id.*

Viewed in this light, the Court SUSTAINS Defendant's Objection concerning Magistrate Judge Newman's interpretation of the scope of Plaintiffs' claims.

### 2. Leave to Amend Complaint

Defendant also argues that Magistrate Judge Newman lacked authority to *sua sponte* grant Plaintiffs leave to file an amended complaint to assert additional claims against Officer Albert in his individual capacity, should they wish to do so.

Regardless of whether the Magistrate Judge had authority to do so, Plaintiffs have subsequently made it clear, in their Objections to the Report and Recommendations, that they purposely sued only Miami Township. They did not

_____

[2] Plaintiffs allege that some of that misconduct was criminal in nature. Nevertheless, Plaintiffs do not assert any state law claims against Miami Township or the officers.

11

intend to file any claims against Officer Albert in his individual capacity, and have no desire to do so.  In fact, they argue that Magistrate Judge Newman "improperly requires the Plaintiffs to file an amended complaint naming the Defendant's subordinates to the action in suit."  Doc. #32-1, PageID#441.

In light of Plaintiffs' statement, the Court will OVERRULE this portion of Defendant's Objections AS MOOT, and VACATE Magistrate Judge Newman's offer granting Plaintiffs leave to file an amended complaint to assert individual capacity claims against Officer Albert.

**B.  Plaintiffs' Objections to Report and Recommendations (Doc. #32)**

The Court turns next to Plaintiffs' Objections to the Report and Recommendations, Doc. #32.  Plaintiffs argue that, in recommending that the Court deny their motion for summary judgment and grant Defendant's motion for summary judgment, Magistrate Judge Newman applied the wrong legal standard, and misapplied the law governing municipal liability.  The Court disagrees.

Magistrate Judge Newman correctly noted that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by a single party to the litigation. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).  Here, Defendant satisfied its burden of proving that there is no genuine

dispute of material fact, and that it is entitled to judgment as a matter of law. Plaintiffs did not.

As the Magistrate Judge noted, this case is somewhat unusual in that both parties moved for summary judgment prior to conducting any discovery, and neither party claimed to need discovery in order to adequately respond to the other's motion. *See* Fed. R. Civ. P. 56(d). Ultimately though, this is not surprising, since the material facts are undisputed, and the viability of Plaintiffs' § 1983 claim against Miami Township hinges on a matter of law.

In their Objections to the Report and Recommendations, Plaintiffs argue at length that Magistrate Judge Newman erred in failing to consider relevant state law governing the question of whether Officer Albert was authorized to have their vehicle towed. In fact, he made absolutely no determination concerning whether the towing and impounding of the car was permissible under Ohio law or the United States Constitution. Rather, his recommendations are based solely on his finding that "even if some underlying constitutional harm could be shown here," the record is "devoid of evidence supporting the existence of a municipal policy or custom that allegedly violated Plaintiffs' constitutional rights." Doc. #29, PageID#396.

The Court finds no error in this analysis. A municipality cannot be held liable under § 1983 merely because it employs an individual who engages in unconstitutional conduct. Rather, a plaintiff must prove that a policy or custom of the municipality was the "moving force" behind the alleged constitutional violation.

*Monell*, 436 U.S. at 694. Such a policy or custom may consist of: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

As Magistrate Judge Newman correctly noted, because Plaintiffs have failed to identify any express municipal policy, the first method is inapplicable.[3] The third method is also inapplicable, given that Plaintiffs have not alleged a policy of inadequate training or supervision.

Citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986), Plaintiffs argue that the Board of Trustees, the entity allegedly "responsible for establishing final policy with respect to the subject matter in question," made "a deliberate choice to follow a course of action . . . from among various alternatives" when it chose not to investigate the complaints outlined in Kiel's March 10, 2014, letter, and chose not to take any action to remedy the alleged wrongdoing.

*Pembaur*, however, applies only to situations where a high-ranking official makes a decision or establishes a policy which, *when executed*, leads to the alleged constitutional violation. For example, in *Pembaur*, the county prosecutor

---

[3] Plaintiffs cite only to Chief Hess's letter, which concluded that the towing of the vehicle was "legal and within our established policies." Doc. #2-1, PageID#23. Plaintiffs argue that this statement proves that Miami Township has a widespread, established practice of illegally towing abandoned vehicles. As Magistrate Judge Newman noted, however, Plaintiffs have presented no evidence to support any such claim.

directed deputy sheriffs to forcibly enter the plaintiff's medical clinic to serve capiases and conduct a warrantless search. The Supreme Court held that, because the county prosecutor had final authority to establish policy with respect to the action ordered, the county could be held responsible for any Fourth Amendment violation. 475 U.S. at 481-83. *See also Moldowan v. City of Warren*, 578 F.3d 351, 394 (6th Cir. 2009) (affirming denial of summary judgment on *Monell* claim because a reasonable jury could find that the final policymaker ordered the destruction of material evidence). In these situations, the execution of the official's order is deemed to be the "moving force" behind the alleged constitutional violation.

*Pembaur* does not apply in this case, however. Plaintiffs do not allege that the Miami Township Board of Trustees ordered the officers to tow or impound the vehicle, to threaten Plaintiffs with a taser, or to engage in any other allegedly unconstitutional behavior. Rather, Plaintiffs allege only that the Board of Trustees ratified the officers' conduct after the fact.

Quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), Plaintiffs correctly note that, if the authorized policymakers explicitly approve of both the "subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." However, "mere acquiescence in a single discretionary decision by a subordinate is not sufficient to show ratification. Otherwise, the City would be liable for all of the discretionary decisions of its employees, and this would be indistinguishable from *respondeat*

*superior* liability." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) (citation omitted). Rather, ratification "requires affirmative approval of a particular decision made by a subordinate." *Id.*

Here, Plaintiffs have presented no evidence showing that the Miami Township Board of Trustees issued any statement affirmatively approving of the officers' conduct or the basis for it.[4] Instead, Plaintiffs allege that the Board *impliedly* approved of the wrongdoing by failing to conduct a meaningful investigation into Kiel's complaint, and by failing to take any action to remedy the alleged wrongdoing. Standing alone, these allegations are insufficient to establish municipal liability.

As explained in *Daniels v. City of Columbus*, No. C2-00-562, 2002 WL 484622, (S.D. Ohio Feb. 20, 2002):

> In most cases, once an individual's rights have been violated, a subsequent failure to conduct a meaningful investigation cannot logically be the "moving force" behind the alleged constitutional deprivation. *See Tompkins v. Frost,* 655 F. Supp. 468, 472 (E.D. Mich. 1987) ("wrongful conduct after an injury cannot be the proximate cause of the same injury"); *Fox v. VanOosterum,* 987 F. Supp. 597, 604 (W.D. Mich. 1997) (argument that decision not to investigate, made after alleged violation took place, somehow caused that violation, defies logic). For this reason, mere ratification of the conduct at issue does not generally subject a municipality to § 1983 liability.

*Id.* at *5.

---

[4] Although Plaintiffs allege that Chief Hess found that Officer Albert's decision to tow the car was within established procedures, they do not argue that Chief Hess is an authorized policymaker or final decision-maker whose ratification is chargeable to Miami Township.

16

Likewise, the Board of Trustees' after-the-fact implied acquiescence, in failing to remedy the alleged wrongdoing, cannot logically be the moving force behind the alleged constitutional violations. *See Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013) (explaining that a final decision-maker's "after-the-fact approval of the investigation, which did not itself cause or continue a harm" against the plaintiff, was insufficient to establish municipal liability).

One exception exists, but it is inapplicable here. In *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985), and *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989), the Sixth Circuit found that a failure to investigate incidents of alleged police abuse, and to discipline the officers involved, demonstrated deliberate indifference to the constitutional rights of the victims, and subjected the municipality to liability. In each case, however, there was a documented pattern of abuse *prior to* the incident giving rise to the lawsuit.[5] When such documentation exists, failure to investigate a complaint or to discipline the wrongdoer may constitute evidence that the municipality has a policy or custom of tolerating unconstitutional behavior. *See Alexander v. Beale St. Blues Co., Inc.*, 108 F. Supp. 2d 934, 949 (W.D. Tenn. 1999) (holding that "[a]lthough ratification might tend to establish the existence of a policy of acquiescence that in

---

[5] To the extent that *Wright v. City of Canton,* 138 F. Supp. 2d 955, 966 (N.D. Ohio 2001), cited by Plaintiffs, failed to make this distinction, this Court believes that *Wright* was wrongly decided.

itself was a 'moving force,' mere ratification of the conduct at issue by itself cannot legally suffice as a 'moving force'").

However, a "single, isolated incident" of a failure to conduct a meaningful investigation or to discipline the officers involved cannot give rise to municipal liability. *See Maynard v. Jackson Cnty.,* 706 F. Supp. 2d 817, 827-28 (S.D. Ohio 2010) (holding that sheriff's failure to discipline an officer "on this single occasion" could not be deemed the "moving force" behind the constitutional violation). *See also Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 701 n.5 (6th Cir. 2006) ("We have not found any legal support for the proposition that, in the absence of deliberate indifference *before* a constitutional violation, a municipality may be liable for simply failing to investigate or punish a wrongdoer *after* the violation.") (emphasis added).

Here, Plaintiffs have presented no evidence that, prior to this particular incident, the Miami Township Board of Trustees had a documented history of tolerating unconstitutional behavior by its employees. Absent evidence that this was anything other than a "single, isolated incident," the Board's failure to conduct a meaningful investigation into Kiel's complaints, and its refusal to take any action to remedy the alleged wrongs, cannot logically be the "moving force" behind the alleged constitutional violations.

Having carefully considered the parties' cross-motions for summary judgment and their Objections to the Report and Recommendations, the Court concludes that there are no genuine disputes of material fact, and that Defendant

18

Miami Township is entitled to judgment as a matter of law. Magistrate Judge Newman correctly concluded that, regardless of whether Plaintiffs' constitutional rights were violated, Miami Township cannot be held liable under § 1983. Based on the evidence presented, no reasonable jury could find that a custom or policy of the Township was the moving force behind the alleged wrongdoing.

## IV.   Conclusion

As set forth above, Magistrate Judge Newman's Report and Recommendations, Doc. #29, are ADOPTED IN PART and REJECTED IN PART. The Court SUSTAINS Defendant's Objections, Doc. #30, and OVERRULES Plaintiffs' Objections, Doc. #32, to the Report and Recommendations.

The Court OVERRULES Plaintiffs' Motion for Sanctions Pursuant to Fed. R. Civ. P. 11(c)(2), Doc. #20. The Court also OVERRULES Plaintiffs' Motion for Summary Judgment, Doc. #2, and VACATES Magistrate Judge Newman's order granting Plaintiffs leave to file an amended complaint asserting new claims against Officer Albert in his individual capacity.

To the extent that Magistrate Judge Newman construed Defendant's Motion for Summary Judgment, Doc. #21, as a motion for *partial* summary judgment, limited only to a § 1983 claim arising out of the towing and impounding of the vehicle, the Court REJECTS his interpretation of Defendant's motion. As noted above, the Court reads Plaintiffs' Complaint to assert a single § 1983 claim against Miami Township, based on a ratification theory, and reads Defendant's motion to

seek dismissal of that claim in its entirety.  Accordingly, the Court also REJECTS Magistrate Judge Newman's recommendation that Plaintiffs be permitted to re-file a motion for summary judgment in connection with the other claims that he read into the Complaint.  For the reasons set forth above, the Court SUSTAINS Defendant's Motion for Summary Judgment, Doc. #21, in its entirety.

Judgment shall be entered in favor of Defendant and against Plaintiffs.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: February 12, 2015

WALTER H. RICE
UNITED STATES DISTRICT JUDGE